## GILCHRIST *vs.* CUNNINGHAM.

Where A. & B., members of a *firm*, took in deposit a mortgage as security for an advance made by them, with the understanding that it should be subsequently assigned to them, and it was subsequently assigned to A. *alone*, but in consummation of the original agreement, and A. as *assignee* foreclosed the mortgage and bought in the mortgaged property in his own name, *it was held* that an action might be maintained against *both partners* for the avails of such sale as for *money had and received*, and that the party depositing the mortgage was entitled to recover the amount of the purchase money, deducting the advance made to him.

*Parol evidence* is inadmissible to shew that an assignment of a mortgage *absolute* in its terms, is a mere security for the performance of a contract.

ERROR from the superior court of the city of New-York. Cunningham sued R. Gilchrist and J. T. Gilchrist in an action of assumpsit for *money had and received.* On the 9th August, 1827, the defendants being commission merchants, made an *advance* to the plaintiff of $1500, by their note for that sum at 90 days, which, when due, they paid. On making the advance, they received of the plaintiff two mortgages as security for the delivery to them of a quantity of flour, to be sold for

VOL. VIII.                    81

the account of the plaintiff; one of the mortgages was executed by S. T. Baldwin and Sarah Ann his wife to Edward Curtis, for $1500, and the other by A. H. Warner to Erastus Barnes, for $1061,24; for which mortgages the defendants gave their receipt in the *name of their firm.* On the 5th May, 1828, the defendants received $1141,28, in full of the mortgage executed by Warner. When the mortgage executed by Baldwin was delivered to the defendants, it was not assigned, but it was agreed by Curtis, the mortgagee, who held the same in trust for Cunningham, that an assignment should be executed. On the 9th November, 1827, when the note of the defendants fell due, Curtis executed an assignment of the mortgage to J. T. Gilchrist, one of the defendants, *solely ;* it was *absolute* in its terms. Curtis objected to execute such assignment, but Gilchrist told him, that although absolute in its terms, the object was to perfect the original agreement as security for the advance made by him and his partner. J. T. Gilchrist thereupon, as the *assignee* of the mortgage, foreclosed the equity of redemption, and sold the mortgaged premises on the 7th June, 1828, becoming himself the purchaser, at the sum of $1450. Curtis was present at the sale, and bid $1425 for the property; but Gilchrist bidding a higher sum, it was struck off to him. The defendants shewed that the mortgage from Baldwin and wife conveyed only a life estate in the mortgaged premises belonging to the wife of Baldwin, who, (her husband, Baldwin, being dead,) on the 14th December, 1827, released her equity of redemption to J. T. Gilchrist. After the assignment of the mortgage, J. T. Gilchrist treated it as his *individual* property, giving directions as to its foreclosure, and receiving rents in his own name from the tenant in possession of the property. The defendants, before any testimony was given on their part, moved for a *nonsuit,* on the ground that the action should have been brought against J. T. Gilchrist *alone,* he being the sole assignee of the mortgage ; but the court refused to nonsuit the plaintiff. The defendants also objected to the evidence which was *parol,* explaining the absolute assignment of the mortgage; but it was received, notwithstanding such objection. The jury, under the charge of the court, found a verdict for the plaintiff for

$1238, $\frac{61}{100}$, the balance of the monies received by the defend-
ants on the two mortgages, after deducting their advance.
The defendants having excepted to the decisions of the court,
sued out a writ of error.

*C. V. S. Kane*, for the plaintiffs in error.

*J. W. Gerard*, for the defendant in error.

*By the Court*, SAVAGE, Ch. J. Two questions of law were raised in the court below, and those questions have been argued here: 1. Whether the action was properly brought against *both* defendants; 1. Whether the testimony of Curtis was properly admitted, explaining the assignment of the mortgage.

The original transaction was clearly a loan of $1500, for which the two mortgages were received as collateral security; if, therefore, the defendants have received upon those securities more than their $1500 and interest, the surplus is money in their hands for the use of the plaintiff below, or his assignee. There can be no pretence that the original transaction was a sale of those mortgages; and if such an inference might be drawn from the *absolute* assignment to J. T. G. the evidence of Mr. Curtis, which I here assume to have been properly received, shews that the assignment was merely in pursuance of the original agreement. The first deposit of the mortgages was in the nature of a mortgage of these securities, and the assignment was necessary only to enable the defendants to render them available. In this view of the case, the question is whether there was *money received by the defendants jointly*. It is contended that J. T. G. acted for himself individually, and purchased for himself and not for the firm ; it is clear, however, that he was assignee of the mortgage representing the firm ; the money was lent by the firm, the securities were taken by the firm, and the assignment was merely a consummation of the delivery of the securities ; it is precisely the same as if the assignment had been executed when the loan was made. It is true, that partners taking real estate, hold it not as partners, but as tenants in common, but that

principle is not applicable here; the mortgage was not real estate it was personal, a mere security.  J. T. G. as purchaser, became seised of the reality; he held the *mortgage* as partner for the firm, but he held the land in his individual right. It is immaterial who became the purchaser upon the foreclosure; the assignment was made for the benefit of the firm, and of course the foreclosure was for their benefit.  I consider it the same as if the assignment had been made to both members of the firm, and the foreclosure by both.  There is no evidence of the actual receipt of money by the defendants on the foreclosure of the mortgage, but in *Tuttle* v. *Mayo*, 7 Johns. R. 132, it was held by this court that it is not necessary in all cases to shew positively the receipt of money; when from the facts proved, it may be fairly presumed that the defendant has received the plaintiff's money, the action for money had and received is maintainable.  Here the property was sold, and $1425 were bid for it by Curtis, who bid on his own account, and no doubt was ready to pay the money; this offer the defendants refused by receiving the bid of J. T. G.  The presumption is a fair one, if sold to a stranger it would be conclusive without explanation, that the money was received.

But if no money was paid by the purchaser, still the defendants are liable for it on the ground that they have extinguished the plaintiff's demand against the mortgagor; on this principle the plaintiff recovered in *Beardsley* v. *Root*, 11 Johns. R. 464.  There an attorney had discharged his client's debt by applying it to the purchase of land for himself.  Here the defendants, by a foreclosure of a mortgage which they held as collateral security, have extinguished the plaintiff's remedy upon the mortgage for the balance over the amount necessary to pay the debt due the defendants.  There is another ground which seems to me to be tenable, if it were necessary to resort to it.  It was held in *Ainslie* v. *Wilson*, 7 Cowen 662, that *property*, paid or received as money, will support the action for money paid or had and received, the same as if money itself had been paid or received.  In that case land was conveyed in payment of a money debt, and received as money, and was held sufficient to sustain the action for money paid. Here the mortgaged premises were sold by the defendants as

assignees of the mortgage; the defendant, J. T. G. as *partner*, sold; as an *individual,* he purchased; in his hands the land is converted into money; that money he receives as partner, and therefore, the firm is responsible. But this subtlety is unnecessary; the firm held the mortgage, they were agents for the plaintiff for all above their own debt, they have extinguished the whole mortgage, as I will presume, without receiving the money, and therefore are liable in this action to their principal. 11 Mass. R. 494. The action was, therefore, properly brought against both defendants, and both are liable.

The next inquiry is, whether the evidence explaining the absolute assignment was properly admitted. It is conceded by the plaintiff's counsel that parol evidence may be given to shew that a deed, absolute on its face, was intended as a mortgage; that is all which was shewn in this case. The correctness of the principle permitting such evidence is asserted by Ch. Kent, 4 Kent's Comm. 136, *and cases cited in support of it.* 2 Cowen, 234. 18 Johns. R. 169. The judgment of the superior court should, therefore, be affirmed with single costs.