### BIRCKHEAD v. DE FOREST et al.

(Circuit Court of Appeals, Second Circuit. January 8, 1903.)

#### No. 3.

1. PARTNERSHIP—LIABILITY OF PARTNERS—FAILURE TO GIVE NOTICE OF DISSOLUTION.

A firm of attorneys had done business for plaintiff's testatrix for a number of years, one of the members making investments for her and looking after the securities taken. The firm dissolved, but no notice of the fact was given to the client, and the members continued to occupy the same office, and to use the firm name upon their signs, letter heads,

and in suits. Such member of the old firm foreclosed a mortgage taken by him for the client, using the firm name with the consent of the others. He bid in the property himself, making no cash payment, but the firm receipted for such payment on the records. He advised the client of his purchase, but not that the money was not paid, and in answer to her request to reinvest the money wrote her that he could probably do so on the same property. He subsequently remitted her the interest regularly, until her death, after which he became insolvent, never having made any reinvestment in her name. *Held*, that if decedent employed him in his representative capacity as a member of the firm the other members were jointly liable with him for the amount of the bid, to the extent of the mortgage, and that whether she did so deal with him was a question for the jury.

2. LIMITATIONS—ACCRUAL OF CAUSE OF ACTION—DEMAND.

The client having authorized the reinvestment of the proceeds of the mortgage, a cause of action in her favor to recover the same did not accrue, nor the statute of limitations commence to run against her, until demand, provided such demand was made within a reasonable time, and she would not be required to make it so long as she was led to believe that the money had in fact been reinvested, nor could the defendants allege their own wrong by setting up a misappropriation of the money to give a right of action without demand, which would entitle them to the defense of limitation.

3. SAME—ACTION AGAINST ATTORNEYS—NEW YORK STATUTE.

Code Civ. Proc. N. Y. § 410, as construed by the courts of the state, operates to shield clients from the effect of the six-years statute of limitations in actions growing out of the receipt and detention of money by attorneys, when the client does not have knowledge of the facts which entitle him to dispense with a demand, and to set the statute in operation only from the time he acquires such knowledge.

In Error to the Circuit Court of the United States for the Southern District of New York.

Treadwell Cleveland, for plaintiff in error.

Austin G. Fox, for defendants in error.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

WALLACE, Circuit Judge. The plaintiff in error was the plaintiff in the court below, and brings this writ of error to review a judgment for the defendants. The action was brought to recover money alleged to have been received by the defendants as copartners in the law firm of De Forest & Weeks, being the proceeds of a mortgage owned by Mary E. Birckhead, the plaintiff's testatrix, which was foreclosed by De Forest & Weeks as her attorneys. The defense to the action by the defendants, the two De Forests and Hall, was that they were not copartners with Weeks at the time of the foreclosure of the mortgage, and did not receive any of the proceeds. They also pleaded the six-years statute of limitations as a bar. Weeks did not defend the action. Upon the trial the jury was instructed by the court to render a verdict for the defendants. The assignments of error challenge the correctness of this ruling.

The evidence established the following facts: The law firm of De Forest & Weeks was constituted prior to 1878, their office being at the city of New York. Mrs. Birckhead resided at Baltimore, and before her marriage Mr. De Forest had been her guardian. After she became of age, and in 1878, the firm were her attorneys in litigation

to which she was a party. From that time until her death, in March, 1891, Weeks was intrusted by her with the care and management of investments in this state, including the loaning of funds on bond and mortgage, keeping the custody of the securities, collecting the inter-. est, and reinvesting the principal from time to time. In 1884 he loaned 'for her $6,000 to the Misses Carpenter, and took their bond payable to her, secured by a mortgage upon certain real estate in Dutchess county. The firm examined the title upon the loan, drew the bond and mortgage, procured the mortgage to be recorded, and received the compensation therefor. The bond was conditioned for the payment of the principal sum May 1, 1886, with interest semiannually at 6 per cent. on the 1st days of May and November in each year. Weeks collected and remitted to Mrs. Birckhead the interest, $180, which became due November 1, 1886. In February, 1887, he advised her by letter that he proposed to foreclose the mortgage, as the Carpenters found it necessary to sell the property, and there were difficulties in the way of their making title without a foreclosure. February 27, 1887, he caused an action to be brought in her name for the foreclosure of the mortgage, using the name of De Forest & Weeks as her attorneys of record. This action was prosecuted to a final decree, and the mortgaged property was sold under the decree in June, 1887, by a referee appointed by the court, Weeks becoming the purchaser at the sale upon a bid for $6,500. No purchase money was actually paid by Weeks, but De Forest & Weeks as attorneys for Mrs. Birckhead receipted for the amount to the referee. Neither De Forest & Weeks, nor Weeks individually, rendered any bill to Mrs. Birckhead for services or disbursements in the foreclosure action, or ever received any compensation therefor. Pending the foreclosure Weeks had advised Mrs. Birckhead by letter that he should probably bid in the property himself at the foreclosure sale. In reply to this she expressed the hope that he would be able to reinvest the money. Subsequently he advised her that he had bid the property in at the sale, and should endeavor to sell it again at private sale, and would very possibly be able in doing so to have her mortgage continued. From this time until Mrs. Birckhead's death he remitted to her each May and November $180, purporting to be interest payments received by him upon the Carpenter mortgages. After Mrs. Birckhead's death he remitted similar interest payments to the plaintiff, including one for November, 1892. No interest payment for May, 1893, was remitted, and in that month Weeks made a general assignment for the benefit of creditors. Irrespective of the assignment, it does not appear whether or not Weeks ever sold or conveyed the Carpenter property. It does appear, however, that no mortgage on the property to Mrs. Birckhead subsequent to the original was ever recorded with the clerk of Dutchess county.

The firm of De Forest & Weeks had been composed of the defendants and Weeks. It was dissolved December 31, 1886, but no notice of the dissolution was given to Mrs. Birckhead, or to many other clients of the firm, and until subsequent to her death the De Forests and Hall occupied the same office with Weeks, and the name of De Forest & Weeks continued upon the office signs. The De Forests, Hall, and

Weeks employed the same office clerks, and jointly contributed the expenses of office rent and clerk hire. Mr. De Forest in his testimony thus described the situation: "The firm name of De Forest & Weeks was continued, I think, until 1893. It was used in connection with the transactions of our law business, and it appeared upon the door; it appeared upon the signboard upon the building; it appeared on our letter heads; it appeared upon the books which were used for the binding up of papers. We saw no reason for not doing so. So far as any stranger was concerned, there was no change in the name under which the business was conducted." The name of De Forest & Weeks was occasionally used as the attorneys of record in suits. Mr. Hall testified: "That name was used continually right along, just as if the firm had never been dissolved, so far as the use of the name was concerned." The letters of Weeks to Mrs. Birckhead, though signed by him individually, were always written upon paper bearing the letter head of the firm.

There was no evidence tending to show that Mrs. Birckhead was ever informed that the property was sold at the foreclosure sale without a cash payment, and the evidence authorized the jury to find that she always supposed it had been sold for a sufficient sum to satisfy her mortgage in full, and that the purchase money had been paid by Weeks and reinvested for her, and that he had conveyed the property to the Carpenters, and by some arrangement with them had reinstated the mortgage upon the property. It was conceded upon the trial that Weeks used the firm name to foreclose the mortgage with the permission of the defendants.

Upon the case thus presented we think there were questions of fact for the determination of the jury.

Clients commonly intrust their legal business to some one of the members of a law firm in preference to the others, and the circumstance that a particular member is selected does not affect the liability of all the partners for the acts of each. The retainer or employment of one gives rise to a joint liability to all by the client, and reciprocally to a joint liability by all to the client. Harman v. Johnson, 22 Law J. Q. B. 297; Warner v. Griswold, 8 Wend. 665.

Although Mrs. Birckhead had intrusted the management of her affairs to Weeks personally, if in doing so she supposed him to be the representative of the firm in her transactions, it is clear that all the members of the firm were responsible to her for any breach of his professional duties to her prejudice. As to Mrs. Birckhead they maintained their original copartnership relations, and after the dissolution, as before, the several members continued to be copartners. When the firm consented to act as her attorneys in the foreclosure action, the several members became jointly liable for any miscarriage in the conduct of the proceedings. It is quite immaterial that she did not know whether the firm or Weeks personally had undertaken the conduct of the foreclosure action, if she supposed that in that proceeding he was representing the firm. Towards her their position was precisely the same as though they had been copartners between themselves. It was for the jury to determine upon all the evidence whether she dealt with

him in his representative capacity, or individually and without reliance upon the responsibility of the defendants.

If Mrs. Birckhead dealt with Weeks in his representative capacity, it would seem plain that the firm became liable to her for the amount of the bid at the foreclosure sale to the extent necessary to satisfy her mortgage. This is not because Weeks bid in the property himself; that act was impliedly authorized in advance, and the evidence would have authorized the jury to find was subsequently ratified by Mrs. Birckhead. But the firm was bound to see to it, in the absence of instructions from her to the contrary, that the avails of the sale were secured to her. Having accepted Weeks' personal responsibility in lieu of money, the firm became liable to her as for money received to her use. Gilchrist v. Cunningham, 8 Wend. 641; Beardsley v. Root, 11 Johns. 464, 6 Am. Dec. 386. They permitted the mortgage to be extinguished by the sale, and, instead of requiring the purchaser to pay in the amount of the purchase money, permitted him to retain it in his own hands. They thereby became responsible for it as though they had actually received it. It is true Weeks was authorized by Mrs. Birckhead to reinvest it, and if he had done so their liability would have been discharged; and if he had actually paid it to them, and they had paid it back to him for investment in a particular security, and he had so invested it, as there would have been no violation of duty against Mrs. Birckhead on his part, there would have been none on theirs. But, having permitted it to remain in his hands without seeing to it that it was applied to a legitimate purpose, they cannot escape responsibility for the consequences.

It remains to consider whether the statute of limitations was a defense to the action. This action was commenced September 26, 1894, and by the statute was barred if it was not brought within six years from the time the cause of action accrued. It is insisted for the defendants in error that the cause of action arose at the time of the foreclosure sale, in June, 1887. It is insisted for the plaintiff in error that because of Weeks' conduct in leading Mrs. Birckhead to suppose that her money had been reinvested the cause of action did not arise until she had knowledge of the facts. In applying the statute of limitations the federal courts in actions at law follow the rules which obtain in the courts of the state within which the action is tried. Leffingwell v. Warren, 2 Black, 599, 17 L. Ed. 261. The construction given to such a statute by the courts of the state is, in effect, read into it and becomes a part of it. By the settled decisions of the courts of this state the cause of action for the breach of a contract arises at the time when an action could have been maintained for the breach, and the running of the statute is not intercepted by proof of a fraudulent concealment by the defendant of the cause of action, and the failure of the plaintiff to discover the breach by reason of the fraud. Troup v. Smith's Ex'rs, 20 Johns. 33; Oothout v. Thompson, Id. 277; Leonard v. Pitney, 5 Wend. 30; Allen v. Mille, 17 Wend. 202. In Engel v. Fischer, 102 N. Y. 400, 7 N. E. 300, 55 Am. Rep. 818, speaking of the statute, the court said:

"Its plain language cannot be perverted to remedy the hardship of the particular case. It is a benign statute, and the legislature has written in it

.all the exceptions which sound policy dictated to it. It may frequently operate to 'defeat' just claims, and be used by dishonest debtors to escape the payment of honest debts. A cause of action may be barred before it is known to the claimant. The debtor may purposely conceal it, and yet the bar of the statute must inexorably be applied."

In Shapley v. Abbott, 42 N. Y. 443, 1 Am. Rep. 548, the court held that a defendant cannot be deprived of the benefit and protection of the statute by any parol waiver, agreement, or estoppel, because this would be contrary to the policy of the statute.

Treating the amount of Weeks' bid as money in the hands of the defendants, and which came to their hands at the time of the foreclosure sale, it is not open to doubt that a demand was at that time a prerequisite to a right of action against them. Weeks having been authorized to invest the money in another mortgage for Mrs. Birckhead, he and his copartners were authorized to retain it for the purpose until a demand for its return. The case is therefore one for the application of the familiar rule that when a demand is necessary to perfect the cause of action the statute does not begin to run until the demand has been made, subject to the qualification that the demand must be made within a reasonable time.

In view of the facts it cannot well be asserted that the bar of the statute began to run because the demand was unreasonably postponed. The jury was authorized to find that it was postponed in reliance upon the representation of Weeks that he had reinvested the money pursuant to Mrs. Birckhead's request.

Doubtless, if it had appeared that Weeks had misappropriated the money, an action could have been maintained by Mrs. Birckhead without a demand. But this does not appear. Besides, it would not lie with the defendants to assert this. The wrongdoer "cannot allege his own wrong for the purpose of carrying back the injury to a time which would let in the statute." Angell on Limitations (5th Ed., sec. 72). In Ganley v. Troy City National Bank, 98 N. Y. 487, the action was brought against a bailee with whom certain treasury notes had been deposited for safe-keeping, and which had been sold by the bailee at the request of an unauthorized person, and the proceeds paid to him. The court said:

"By the sale the wrong was committed, and no demand was necessary to lay the foundation of an action for the conversion against the bank. * * * In such an action, no demand being necessary before the right of action accrues, the statute of limitations commences to run from the time of the conversion, and not the time of the subsequent demand. But in all cases like this the owner of property wrongfully converted has a right also to sue upon the contract expressly made by the parties thereto, or implied by law from the facts and the relation of the parties. Instead of suing for the conversion, then this plaintiff had the right, as he did, to sue for the breach of the contract, and that action did not accrue until a demand. It is universally true that the statute of limitations does not commence to run upon a cause of action upon contract until it has accrued, and that where a demand is necessary before an action can be commenced the statute does not begin to run until after the demand. By the terms of this contract the defendant was bound to keep these treasury notes safe for Mrs. Ganley, and to deliver them up to her upon her demand, on the surrender of the receipt which was given her. She could not put the defendant in default upon its contract until a demand and an offer to surrender the receipt, and until that time her cause

of action did not accrue. In such a case a tort feasor cannot allege his own wrong for the purpose of defeating an action upon the contract."

We conclude that the cause of action was not perfect until the demand was made, or until delay in making the demand was no longer justifiable, and, the action having been brought within six years thereafter, the statute of limitations was not a defense.

It has been urged by the plaintiff in error that section 410 of the Code of Civil Procedure has the effect to postpone the running of the statute until the facts constituting the cause of action were known to Mrs. Birckhead, or to the plaintiff. The courts of New York seem to have considered this section as meaning, among other things, to shield clients from the operation of the six-years statute of limitations in actions growing out of the receipt and detention of money by attorneys, when the client does not have knowledge of the facts which entitle him to dispense with the demand before bringing the action, and to set the statute in operation only from the time when he acquires knowledge. Wood v. Young, 141 N. Y. 211, 36 N. E. 193; Bronson v. Munson, 29 Hun, 54; Grinnell v. Sherman (Sup.) 14 N. Y. Supp. 544, 546; Cornwell v. Clement, 10 App. Div. 446, 42 N. Y. Supp. 295. While we might hesitate to attribute this meaning to the section in the absence of these decisions, we do not feel at liberty to disregard them.

We think that the assignments of error are well taken, and that the court erred in directing a verdict for the defendants. The judgment is accordingly reversed.