MINNEAPOLIS TRUST COMPANY, Appellant, *v.* HELEN MATHER, Respondent.

PRINCIPAL AND AGENT— WHEN AGENT'S FAILURE TO OBEY INSTRUCTIONS AS TO PROPERTY PLEDGED TO IT BY PRINCIPAL DOES NOT CREATE LIABILITY AS FOR A CONVERSION BUT ONLY FOR THE RESULTING DAMAGES. Where a trust company to which certain promissory notes of a third party and mortgages given as collateral thereto had been pledged and which had been instructed by the pledgor to foreclose the mortgages and "bid in the property for somewhere near its present value and take

judgment against the makers of the notes for any deficiency there may be," instead of following instructions, bids in the property at the full face value of the securities with interest and costs thereon, which was much more than the value of the land, thus releasing the makers from any liability for deficiency, it is liable, not as for a conversion of the securities, but only for the difference between the value of the land and the amount bid for the same.

*Minneapolis Trust Co.* v. *Mather,* 90 App. Div. 361, reversed.

(Argued February 28, 1905; decided April 11, 1905.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 14, 1904, affirming a judgment in favor of defendant entered upon the report of a referee.

The first cause of action in the complaint is upon a promissory note made by the defendant to the order of the plaintiff, and the second is for commissions for rents collected, compensation for services performed, and moneys advanced by the plaintiff for the defendant. The plaintiff's demands are practically uncontroverted, but the answer sets forth several affirmative defenses and a counterclaim which raise the real issues in the case.

The material facts found by the referee are substantially as follows: In December, 1886, the defendant sold to one Whitney certain lands in the " Whitney re-arrangement of Bellevue Addition to Saint Paul," Minnesota, and took in part payment of the purchase price ten promissory notes, with five collateral mortgages aggregating $20,100. In October, 1889, the defendant left these notes and mortgages with the plaintiff for collection, and in March, 1891, the plaintiff also took charge of other property in Minnesota belonging to the defendant. In December, 1890, the plaintiff loaned to the defendant $5,000 upon her note for that amount, taking as security therefor an assignment of the Whitney notes and mortgages above referred to. This assignment, although absolute on its face, was simply intended as collateral security for the payment of the $5,000 note. This note was renewed from time to time, and, being unpaid in July, 1896, the plain-

tiff commenced an action to recover the amount thereof with interest, and also the amount of an open account, the items of which consisted of commissions for collecting rents and of moneys advanced by the plaintiff for the use and benefit of the defendant.

At the time when the defendant executed and delivered to the plaintiff the $5,000 note above referred to, the Whitney notes were overdue, the interest thereon for a year remained unpaid, and there were large arrears of taxes on the property covered by the collateral mortgages. Great difficulty had been experienced in collecting anything on the Whitney notes, and considerable correspondence had passed between the plaintiff on the one hand and the defendant and Mr. Atwater, her attorney, of Minneapolis, on the other hand, as to the best course to pursue in the effort to collect the same. As the result of this correspondence and in June or July, 1894, defendant's attorney Atwater instructed the plaintiff to foreclose the Whitney mortgage as soon as possible, "bid in the property for somewhere near its present value, and take judgment against the makers of the notes for any deficiency there might be." Pursuant to these instructions, and on July 16th, 1894, the plaintiff commenced foreclosure by advertisement under the statutes of Minnesota, and this proceeding eventuated in a sheriff's sale of the lands on September 5th, 1895. The plaintiff bid in the property for the sum of $24,434.90, which was the full face value of the notes and accrued interest, together with the costs and expenses of foreclosure, instead of bidding it in "for somewhere near its present value," as instructed by Mr. Atwater. This deviation by the plaintiff from the instructions given it by the defendant's attorney has resulted in the present controversy.

Upon the trial the learned referee awarded judgment in favor of the plaintiff upon the note executed by the defendant and for the amount of the open account which, together with interest, aggregated the sum of $6,699.31. As above stated, these items are undisputed. But he also allowed the full amount of the defendant's counterclaim which resulted in

an affirmative judgment in her favor for the sum of $17,250.05 with interest.

The claim of the defendant as set forth in her affirmative defenses and counterclaim was that the plaintiff at its own option and volition, under the authority contained in the Whitney mortgages and the assignment thereof, and without request or direction from the defendant, foreclosed these mortgages and bid in the lands for. the full amount thereof and costs; that the plaintiff bid off and purchased said lands for its own use and benefit, and thus took title thereto in its own right free and clear of any claim of the defendant; that the plaintiff gave defendant no notice of said foreclosure proceedings and sale, and did not make her a party thereto, but prosecuted and perfected the same in its own way and for its own use and benefit; that the mortgagor Whitney had conveyed the premises to the grantee who had assumed to pay the mortgages, and that the plaintiff had failed and neglected to enforce personal liability of Whitney or his grantees. Upon these allegations the defendant asked for an accounting and an affirmative judgment of $14,000, with interest from September 5th, 1894, which was the date of the sale in the foreclosure proceedings.

The referee's findings in respect of these affirmative defenses and counterclaims are that on June 30th, 1897, Whitney conveyed the mortgaged premises to one Van Dyke, who assumed the payment of the notes and mortgages; that certain persons named Sumbardo and Horr had thereafter purchased the mortgaged property or some part thereof; that the defendant was not made a party to the foreclosure proceedings above referred to, and had no notice thereof until after the sale under the same had been completed; that the land conveyed by the mortgages was something less than twenty acres and was worth at the time of the sale about $20,000; that the aggregate amount due and payable on the Whitney notes and mortgages on September 5th, 1894, was $23,949.36; that the plaintiff commenced no suit against Whitney or his grantees, and made no attempt to collect the notes and mortgages either

from Whitney, Van Dyke or the subsequent grantees ; that the plaintiff's officers did not know Whitney, had never seen him or had any business with him, and that there was no evidence that the plaintiff or any of its officers had ever heard of Van Dyke, or that the mortgaged premises had been conveyed to him ; that the plaintiff was negligent in the collection of said notes and mortgages and in causing the mortgaged premises to be sold at the full amount due thereon, thus releasing the said Whitney and Van Dyke from all personal liability in respect thereto.

Upon these findings of fact the referee found as matter of law, that the plaintiff had converted the pledged securities and must account to the defendant for the value thereof. He fixed the value of the securities as of September 5th, 1894, at $23,949.36, and after deducting therefrom the sum of $6,699.31 due upon the note and account set forth in the complaint, he awarded judgment in favor of the defendant for the difference, which was the sum of $17,250.05, with interest from the date of the foreclosure sale.

*Thomas Thacher* and *Selden Bacon, Jr.,* for appellant. The judgment cannot be sustained upon the theory that the intention of the plaintiff was to buy for its own account exclusively. (*Matter of Gilbert,* 104 N. Y. 200 ; *Bloomer* v. *Sturges,* 58 N. Y. 168; *Dalton* v. *Smith,* 86 N. Y. 176.) The judgment cannot be sustained upon the theory that, though the plaintiff intended to buy for the defendant's account subject to its lien, the purchases must be deemed in law to have been made for its own account exclusively upon the ground that it departed from the defendant's instructions in respect to the amounts bid through negligence or otherwise, and that the defendant thereafter elected not to accept the purchases as for her account. (*Moore* v. *McKibbin,* 33 Barb. 246; *Southwick* v. *Nat. Bank,* 84 N. Y. 420 ; *Clark* v. *Cummings,* 5 Barb. 339 ; Colebr. on Col. Sec. § 183 ; *Brown* v. *Taylor,* 8 Gray, 135 ; *Stevens* v. *Dedham Inst.,* 129 Mass.

547; *Nat. Bank* v. *O. F.*, etc., *Co.*, 20 Fed. Rep. 65; *Sarjeant* v. *Blunt*, 16 Johns. 73; *Laverty* v. *Snethen*, 68 N. Y. 522; *Comley* v. *Dazian*, 114 N. Y. 161.) Independently of said instructions, plaintiff was authorized to buy the property for account of the defendant subject to its lien for the debt to it, and if it bid more than defendant suggested the purchases would still be for defendant's account subject to such lien, and any negligence or wrongdoing in that respect would, at the most, give defendant a right to compensation for the injury resulting to her. (*Matter of Gilbert*, 104 N. Y. 200; *Plucker* v. *Teller*, 174 Penn. St. 529; *Hoyt* v. *Martense*, 16 N. Y. 231; *Brown* v. *Taylor*, 8 Gray, 135; *Stevens* v. *Dedham Inst.*, 129 Mass. 547; *Nat. Bank* v. *O. F.*, etc., *Co.*, 20 Fed. Rep. 65; *Whiton* v. *Paul*, 13 R. I. 40.)

*M. H. Merwin* and *Joseph Nellis* for respondent. The defendant had the right to treat the plaintiff as the purchaser of the premises at the amount bid by it at the public sale. (*Gilchrist* v. *Cunningham*, 8 Wend. 641; *Hays* v. *Stone*, 7 Hill, 128; Story on Agency, §§ 192–199; *Mowry* v. *Wood*, 12 Wis. 467; Dunlap's Paley on Agency, 28, ch. 1, pt. 1, § 7; *Williams* v. *Littlefield*, 12 Wend. 362; *Hampton* v. *Speckenagle*, 9 S. & R. 212; 1 Pars. on Cont. [9th ed.] 104; *Nesbit* v. *Helser*, 49 Mo. 383; *Scott* v. *Rogers*, 31 N. Y. 676; *Laverty* v. *Snethen*, 68 N. Y. 522; *Smith* v. *Petrie*, 70 N. Y. 13; *Rice* v. *Tavernier*, 8 Minn. 214.) The defendant had the option of treating the plaintiff as a purchaser, because, *first*, it was, as to the amount over and above its claim, a trustee or agent for the defendant, and in such cases it is well established that such option exists; and, *second*, the plaintiff could not restore the pledged property, as by its bid it had released the maker of the notes and his grantee from all personal liability. (*Wilson* v. *Little*, 2 N. Y. 443; *Gillett* v. *Bank of America*, 160 N. Y. 549, 560; Jones on Pledges & Coll. Sec. [2d ed.] § 140; Perry on Trusts [5th ed.], § 198; *Olcott* v. *T. R. R. Co.*, 27 N. Y. 546; *Kohn* v. *Chopin*, 152 N. Y. 305; *Campbell* v. *P. L. Ins. Co.*, 2 Whart. 53; *Bryan*

v. *Baldwin,* 52 N. Y. 232; *Ogden* v. *Larrabee,* 57 Ill. 398.)
The proofs justify the finding that there was a conversion.
(Jones on Pledges, § 571a; *Lucking* v. *Gounon,* 37 How. Pr.
134; *Douglas* v. *Carpenter,* 17 App. Div. 329; *Glidden* v.
*M. Nat. Bank,* 53 Ohio St. 604; *Laverty* v. *Snethen,* 68
N. Y. 522; *Scott* v. *Rogers,* 31 N. Y. 676; *McMorris* v.
*Simpson,* 21 Wend. 610; *Comley* v. *Dazian,* 114 N. Y. 161;
*Spoor* v. *Newell,* 3 Hill, 307.)

WERNER, J.   Upon the facts found as above stated, the
two principal questions that survive the judgment of affirm-
ance in the Appellate Division are (1) whether there is *any*
evidence to support the findings of fact, and (2) whether the
conclusions of law are warranted by the facts as found.   The
first of these questions need not be discussed, since the most
cursory examination of the record discloses evidence enough
to sustain the referee's findings of fact; but the second ques-
tion cannot be so easily disposed of.   The theory upon which
the judgment against the plaintiff is based is that the latter
was guilty of converting the defendant's securities.   That
theory is quite consistent with the allegations of the defend-
ant's answer, but it does not seem to be borne out by the facts
as proved and found.   If it were true, as alleged in the
defendant's answer, that the plaintiff, of its own volition and
option, without any request or direction from the defendant,
instituted proceedings for the foreclosure of the Whitney
mortgages, and bid in the lands therein described in its own
name and for its own account, the conclusion would naturally
and inevitably follow that the plaintiff must be deemed to
have exercised such unauthorized dominion and control over
the defendant's securities as to render itself liable to the
defendant for the full value thereof.   But these allegations
are not supported by the facts as found by the referee.   The
findings in this behalf are that the defendant employed one
Atwater, an attorney residing in the city of Minneapolis, to
consult with the plaintiff as to the best manner in which to
proceed in the foreclosure of the mortgages for the protection

of the defendant's interests, and that Atwater instructed the plaintiff that " there was no other course to pursue except to proceed to foreclose the Sumbardo mortgages as soon as possible, bid in the property for somewhere near its present value and take a judgment against the makers of the notes for any deficiency there might be." Upon this state of the record we must assume that the plaintiff was authorized to foreclose the mortgages and to bid in the property for the defendant at a price not to exceed its then value. The referee has found that the value of the property was about $20,000, and that it was bid in for $24,434.35, which was the full face value of the Whitney notes and mortgages, with interest to the day of the sale. These uncontradicted facts fully justify the further finding " that the plaintiff was negligent in the collection of the said collateral notes and mortgages, in causing the mortgaged premises to be sold at the full amount due on the respective securities, and thus releasing the maker of said notes and the said Van Dyke, the grantee of said premises, who had assumed the payment of the same."

But we fail to perceive how this finding of negligence justifies the conclusion that the plaintiff was guilty of converting the defendant's securities. It is true that the plaintiff was the pledgee of these securities as well as the agent of the defendant. It is equally true that the defendant was not notified of the foreclosure and that the plaintiff bid in the mortgaged lands in its own name. There is, however, no finding that the plaintiff, in bidding in the property in its own name, was not acting for and on behalf of the defendant, and there is no significance in the failure to notify her of the foreclosure when the circumstances are considered. The mortgaged property was in the state of Minnesota. The plaintiff's place of business was there and it held an assignment of the mortgages. The defendant's attorney had instructed the plaintiff to proceed to a foreclosure and sale. The defendant lived in the state of New York and could act much more conveniently and economically through her pledgee and agent than she could in person. It was, therefore, quite natural and proper

that the plaintiff should use its own name in acting for the defendant. All this was entirely consistent with the plaintiff's duty as the agent and pledgee of the defendant. It is obvious, however, that in departing from the defendant's instructions as to price the plaintiff was guilty of a breach of duty and rendered itself liable for any damages resulting from such breach. Since there is neither evidence nor finding as to the financial responsibility of either Whitney, the mortgagor, or Van Dyke, his grantee, who assumed payment of the mortgages, the most favorable view of the case to which the defendant can be entitled is that if the plaintiff had obeyed instructions by bidding in the property at its actual value a deficiency judgment might have been collected from Whitney or Van Dyke. It would seem to follow as a logical corollary that the defendant's right of recovery should be measured by what she may have lost through the plaintiff's misconduct; for the law of damages is the law of compensation. In the absence of some arbitrary legal rule this would naturally be the difference between the value of the land and the amount bid for the same at the sale. That would seem to be the rule applicable to this case unless the plaintiff's breach of duty amounted to a conversion. We think there was no conversion. The true rule is very succinctly stated in Mechem on Agency (sec. 476) where the learned author says: " In many cases it becomes difficult to determine whether the misconduct of the agent consists in a mere breach of instructions or amounts in law to a conversion; and the distinction is sometimes exceedingly technical. A distinction is nevertheless to be made. Thus it has been held that if property be delivered to an agent with instructions to sell it at a certain price, and he sells it for less than that price, he is not liable in trover as for conversion. (*Sarjeant* v. *Blunt*, 16 Johns. 74; *Dufresne* v. *Hutchinson*, 3 Taunt. 117; *Palmer* v. *Jarmain*, 2 M. & W. 282.) In such a case the agent had a right to sell and deliver, and in that respect he did no more than he was authorized to do. He disobeyed instructions as to price only, and was liable for misconduct, but not for conversion of the

property.    So where an agent was authorized to deliver goods on receiving sufficient security, but delivered them on inadequate security, it was held that trover would not lie." (*Cairnes* v. *Bleecker,* 12 Johns. 300.)    The principle thus enunciated seems to be precisely applicable to the case at bar. There can be no sound distinction between a case of agency to sell at a specified price and one to buy within a price or limit named.

We think the cases cited by the learned Appellate Division and the defendant are not in point.    In *Scott* v. *Rogers* (31 N. Y. 676) the instructions were to sell wheat at a specified price on a particular day, and if not so sold to ship it to a designated consignee in the city of New York.    In *Laverty* v. *Snethen* (68 N. Y. 522) the agent was instructed not to part with a note unless he got the money.    In *Comley* v. *Dazian* (114 N. Y. 161) certain goods were not to be sold without the approval and consent of the owners.    In *Gilchrist* v. *Cunningham* (8 Wend. 641) the assignee of a mortgage as collateral foreclosed the same without instructions and one of the defendants treated the property as his own.    In all of these cases the breach of duty was held to be a conversion, because the act done was wholly unauthorized and in defiance of the owner's rights.    That is the point of distinction between the two classes of cases above referred to.

It is undoubtedly the duty of an agent to obey all the lawful instructions of his principal, and the agent is clearly responsible for all losses occasioned by his disobedience thereof. (*Whitney* v. *Merchants' Union Express Co.,* 104 Mass. 152; *Blot* v. *Boiceau,* 3 N. Y. 78.)    But it is equally clear that the rule of damages as for conversion is not applicable to all cases where a principal may sustain loss through the negligence or disobedience of his agent.    (*Wamsley* v. *Atlas Steamship Co.,* 168 N. Y. 533; *Industrial & General Trust* v. *Tod,* 170 id. 233.)    The law upon this subject is well summed up by BRONSON, J., in *McMorris* v. *Simpson* (21 Wend. 610, 613) as follows:    "The most usual remedies of a principal against his agent are the action of assumpsit and a

special action on the case; but there can be no doubt that trover will sometimes be an appropriate remedy. The action may be maintained whenever the agent has wrongfully converted the property of his principal to his own use; and the fact of conversion may be made out by showing either a demand and refusal, or that the agent has, without necessity, sold or otherwise disposed of the property contrary to his instructions. When an agent wrongfully refuses to surrender the goods of his principal, or wholly departs from his authority in disposing of them, he makes the property his own, and may be treated as a tort-feasor. But there must be some act on the part of the agent — a mere omission of duty is not enough, although the property may be lost in consequence of his neglect. Nor will trover lie where the agent, though wanting in good faith, has acted within the general scope of his powers. There must, I think, be an entire departure from his authority before this action for a conversion of the goods can be maintained."

We think that it was error to hold the plaintiff as for a conversion, and as this view of the case will necessitate a new trial, it is unnecessary to discuss other exceptions treated at length in the brief of the appellant.

The judgment should be reversed and a new trial granted, with costs in all courts to abide the event.

Cullen, Ch. J., Gray, Haight and Vann, JJ., concur; O'Brien and Bartlett, JJ., not voting.

Judgment reversed, etc.