ARTHUR L. BOURQUIN, APPELLEE, V. ATLANTA STATE BANK
ET AL., APPELLANTS.

FILED FEBRUARY 16, 1922.   No. 22010.

1. Principal and Agent: ACTION AGAINST AGENT: MEASURE OF
   DAMAGES.   In an action against an agent for damages alleged to
   have been caused by the agent's payment of a fund, contrary to
   the principal's direction but in line of his duty, the measure of
   recovery, generally, is the actual damages sustained.

2. ——: ——: ———. Where an agent was authorized by his principal to pay money to a certain person upon that person giving a bond for the fulfilment of a promise to give possession of real estate on a stated date, and the agent paid the money without exacting such bond, but taking other and inadequate purported security, such agent is not guilty of conversion of the fund, but is liable for the actual damages the principal has suffered by reason of the failure to follow the instructions of the principal.

APPEAL from the district court for Phelps county: HARRY S. DUNGAN, JUDGE. *Reversed, with directions.*

*J. G. Thompson* and *James I. Rhea,* for appellants.

*Hastings & Hastings, contra.*

Heard before MORRISSEY, C. J., ALDRICH and ROSE, JJ., RAPER and STEWART, District Judges.

RAPER, District Judge.

Action in Phelps county district court, brought by appellee against appellant bank, for alleged conversion of $1,500. Trial to jury, with verdict and judgment for appellee, from which defendant bank and Louis R. Grace, intervener, appeal. Louis R. Grace had contracted to sell to plaintiff a half section of land in Perkins county, for the sum of $11,200, $2,000 of which had been paid and the remainder payable on March 1, 1919, when deed was to be delivered and possession of the farm given. On March 1, 1919, the defendant bank received this telegram:

"Pay L. R. Grace $7,700 on receipt of deed to north half of section 2, township 9, range 37, Perkins county, Nebraska, deed to run to Arthur L. Bourquin, draft following. (Signed) Madrid Exchange Bank."

The telegram had been sent by direction of plaintiff. On the same day plaintiff sent, and defendant received, another telegram:

"Pay L. R. Grace $1,500 when he furnishes bond for like amount for possession of the north half of section 2, township 9, range 38, Perkins county. In case of failure to give possession by March 15, 1919, he is to

refund $1,500. Draft following. (Signed)   A. L. Bourquin."

About that date (probably the same day) plaintiff sent to Louis R. Grace the following message:

"I am wiring the money to your bank. Get your deed to-day before you start any proceedings. A. L. Bourquin."

This was sent subsequently to the telegrams to defendant bank. On the 1st of March plaintiff wrote and mailed a letter to defendant bank as follows:

"I am sending you draft on Neb. State Bank, Lincoln, Neb. for $9,200. In conformation our message 'Pay L. R. Grace $7,700 when he furnishes deed to N.½ of section 2, 9, 38, Perkins Co. Neb.' Also message 'Pay to L. R. Grace $1,500' making total of $9,200. I trust this will be satisfactory to you, and if there is any expense attached to this Mr. Grace should pay it. Mr. Grace promised to furnish a bond that he will furnish possession of these premises or refund the $1,500 damages.

"Very truly yours, A. L. Bourquin, Cashier."

The defendant bank received the draft for $9,200, paid the full amount to Louis R. Grace, and received Grace's deed to plaintiff. Instead of requiring a bond from Grace, as mentioned in the telegram and letter, the defendant accepted the contract between Grace and plaintiff, and on March 4, 1919, sent a letter as follows to plaintiff at Madrid, Neb.:

"Dear Sir:   Received two messages one letter with draft inclosed for $9,200 for L. R. Grace. Grace to deliver deed to N.½ sec. 2-9-38. We inclose deed. L. R. Grace has deposited with us. as surety for possession the agreement between he and you. Very Resp.

"M. A. Fulk, Cash."

The deed was inclosed in this letter. The deed was recorded April 3, 1919. The defendant bank received no response to this letter until May 19, 1919. It further appears that Grace had contracted to buy the land from one Grosenbaugh, and that the plaintiff had contracted

to sell the land after he had bought from Grace. A tenant, J. A. Watson, was in possession of the land, but there is no competent evidence to show by what right he held it, nor when his lease expired. The plaintiff was permitted, without proper qualification, to testify that the value of the possession of the land was $1,500, and that he had placed a check in escrow in a bank at Grant on March 1, and it is not disclosed that plaintiff had any agreement with Watson himself, nor does the evidence show the amount of the check deposited in escrow in the Grant bank, nor the conditions of the escrow, nor that Watson refused to remove from the land without the payment of some money, nor that Watson had any right to remain in possession of the land.

There are some other features of the evidence that it is not deemed necessary to give. The petition was framed upon the theory that, the defendant having paid out the $1,500 without taking the required bond from Grace for possession of the land, the defendant was guilty of conversion, and the court submitted the cause to the jury upon an instruction that, if they found that defendant violated the instructions and paid the money to Grace without procuring the required bond, the plaintiff would be entitled to the full sum of $1,500 and interest, and the jury so found and returned verdict for $1,500 with interest from March 15, 1919, at 7 per cent., a total of $1,685.50.

In this we think there was error. The plaintiff, if successful, was entitled only to recover his actual damages. If the defendant violated the instructions, it was liable for the actual damages. It is often difficult to distinguish between cases where there is a conversion, and where the facts show only a right of action for damages, but in this case it is plain that the measure of damages is the loss, if any, actually sustained by reason of the defendant's conduct. See 31 Cyc. 1453, 1454.

In *Minneapolis Trust Co. v. Mather*, 181 N. Y. 205, it is said: "It is equally clear that the rule of damages

as for conversion is not applicable to all cases where a principal may sustain loss through the negligence or disobedience of his agent (cases cited). The law upon this subject is well summed up by Bronson, J., in *McMorris v. Simpson*, 21 Wend. (N. Y.) 610, 613, as follows:

"'The most usual remedies of a principal against his agent are the action of assumpsit and a special action on the case; but there can be no doubt that trover will sometimes be an appropriate remedy. The action may be maintained whenever the agent has wrongfully converted the property of his principal to his own use, and the fact of conversion may be made out by showing either a demand and refusal, or that the agent has, without necessity, sold or otherwise disposed of the property contrary to his instructions. When an agent wrongfully refuses to surrender the goods of his principal, or wholly departs from his authority in disposing of them, he makes the property his own, and may be treated as a tort-feasor. But there must be some act on the part of the agent. A mere omission of duty is not enough, although the property may be lost in consequence of his neglect. Nor will trover lie where the agent, though wanting in good faith, has acted within the general scope of his powers. There must, I think, be an entire departure from his authority before this action for a conversion of the goods can be maintained.'" In the same case the court quotes with approval from Mecham, Agency, sec. 476: "So where an agent was authorized to deliver goods on receiving sufficient security, but delivered them on inadequate security, it was held that trover would not lie."

It is obvious, that in this case the proof does not sustain the allegation of conversion. Plaintiff's counsel deemed it necessary to offer proof of the value of the tenant's possession, which of itself indicates that they did not rely upon their claim of conversion. The plaintiff should allege and on trial prove the actual damage, if any.

The defendant in its answer alleges that plaintiff

ratified its act in paying the money to Grace. The proof offered on this was that, on March 4, the defendant wrote a letter to plaintiff inclosing his deed, and telling him that defendant had received the agreement for the sale of the land as security for the fulfilment of the promise to give possession, and that plaintiff did not respond to that letter until May 19. We cannot say, as a matter of law, that this delay in objecting to defendant's acts, of itself, constitutes ratification; however, if the delay caused any change in the bank's situation or prevented the bank from protecting itself, if objection had been promptly made, such delay may have created an estoppel, but no estoppel is pleaded.

Louis R. Grace intervened and filed an answer, to which the court sustained a demurrer. One of the defenses pleaded is that the intervener did not authorize plaintiff, or any one else, to negotiate for the possession of the premises, and that no action was ever commenced or prosecuted for obtaining such possession, and that if plaintiff paid $1,500 for such possession it was a voluntary payment. In view of the undisputed evidence that plaintiff, by his instructions to the bank, gave the intervener until March 15 to transfer the possession, it seems questionable, unless some special cause or urgency be shown, that the plaintiff should have the right arbitrarily to fix an amount on March 1, as the value of the possession, without some notice to the intervener of the fact (if it be a fact) that the tenant claimed and had the right to hold over for the next year. Louis R. Grace had such an interest in the result of the relief sought as entitled him to intervene, and to offer proof as to the rights of the tenant, and any other fact that might result in defeating plaintiff's claim, or in reducing the damages.

We do not express any opinion as to the ultimate rights of the parties, nor discuss the effect of the evidence, other than as above pointed out, because the case must be reversed for the reasons above given, and in another trial the

rights of the parties can be adjudicated according to the allegations and proof.

The cause is reversed and remanded, with permission to the parties to file amended pleadings in accordance with the views herein, and trial had on the new pleadings.

REVERSED.