REFRIGERATION DISCOUNT CORPORATION *vs.* PATRICK
CATINO & another.

Middlesex.   February 2, 3, 1953. — May 27, 1953.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Conversion.   Trust Receipt.   Waiver.   Corporation,* Officers and agents.
  *Agency,* Agent's liability to third person.   *Evidence,* Admissions and
  confessions.

A finance company which financed purchases of goods by a dealer and
    in each instance received from the dealer a promissory note and a
    trust receipt could be found in the circumstances not to have waived
    or otherwise lost its security interest in the goods by taking the notes.
    [232–233]
A dealer, in whose store were articles on which he had given a finance
    company trust receipts whereby as between them payment of a speci-
    fied amount by the dealer to the company was a condition precedent
    to the right of the dealer to sell any article, converted the articles by
    selling them without having paid the company the specified amounts.
    [234–235]
One who was president, a director and general manager of a corporation
    which had given a finance company trust receipts covering articles in
    the corporation's store could be found personally liable to the finance
    company for conversion of articles sold in violation of the terms of
    the trust receipts by the corporation acting through him or under his
    immediate supervision and with knowledge on his part of the viola-
    tion.   [234–235]
The treasurer of a corporation operating a store in which were certain
    articles covered by trust receipts given by the corporation to a finance
    company, although he periodically received from the general manager
    of the corporation and applied to its expenses money in fact derived
    from sales of such articles made by the general manager or under his
    immediate supervision in violation of the terms of the trust receipts
    and constituting a conversion of the articles as against the finance
    company, would not be personally liable to the finance company for
    the conversion unless he knew of the wrongful sales as the source of
    such money and so acquiesced and participated in the general mana-
    ger's wrongdoing.   [235–236]
In the circumstances of a conference between the treasurer and the gen-
    eral manager of a corporation operating a store and a third person, at
    which the treasurer categorically denied knowledge of sales of cer-
    tain articles in the store made by the general manager in violation of

trust receipts covering such articles and thereupon the general manager stated that the treasurer knew about the sales since the money derived therefrom had been turned over to and used by the treasurer for the corporation's expenses and asked the treasurer how else such money could have been obtained, silence by the treasurer following such statement and question by the general manager did not constitute an admission by the treasurer of the truth of what the general manager had said. [237–239]

TORT. Writ in the Third District Court of Eastern Middlesex dated December 20, 1948.

Upon removal to the Superior Court, the action was tried before *Nagle, J.*

*David Gorfinkle,* for the plaintiff.

*Richard A. Kaye,* for the defendant Chase.

RONAN, J. This is an action of tort to recover damages for the alleged conversion of certain personal property belonging to the plaintiff. The case is here on the plaintiff's exceptions to the direction of verdicts for the defendants.

The plaintiff was engaged in the business of financing retail dealers of electrical refrigerators, washing machines, gas dryers, television sets, and other similar appliances. The C & C Appliance Company was such a dealer. The plaintiff paid The Eastern Company, a distributor, for nine lots of goods which were then shipped by the distributor between March 5, 1948, and June 29, 1948, to the dealer, the C & C Appliance Company, a corporation. The plaintiff received from the dealer on each shipment a promissory note payable to the plaintiff in three months and a trust receipt. The notes were in the ordinary form and referred to the trust receipt numbers. The trust receipt identified each article by a number and set forth the release price for each article. The release price was the amount due the plaintiff after deducting the down payment made by the dealer at the time the plaintiff purchased the appliance from the distributor. It was agreed that the release price was the fair value of the article. One Kelley, the plaintiff's representative, on July 12, 1948, called at the dealer's store and found that some of the articles included in the trust receipts were missing and complained to the defendant

Catino that these articles should not have been sold unless
the plaintiff had first been paid for them. Catino replied
that business was poor and promised to remit funds to the
plaintiff in about a week, and promised not to sell any more
of the trust receipt goods until the dealer had paid the
amounts due. Kelley again visited the store in August,
1948, and found that more of the goods had been sold.

There was evidence that Catino notified Kelley that the
goods in the store were about to be attached and that Kelley
had better remove the plaintiff's merchandise. Kelley had
the goods removed and checked up what he had taken from
the total shipments. The plaintiff then brought this action
for conversion for the merchandise not returned. The
dealer made an assignment for the benefit of its creditors on
September 23, 1948.

It could be found that the plaintiff did not lose its security
interest in the appliances by taking the notes. The promis-
sory note and the trust receipt given by the dealer on each
lot of merchandise must be construed together in the setting
in which they were employed in order to ascertain the intent
of the parties. *Skilton* v. *R. H. Long Cadillac La Salle Co.*
265 Mass. 595, 597. *Baker* v. *James*, 280 Mass. 43, 46–47.
*Bigelow* v. *Lawyers Mortgage Investment Corp. of Boston*,
320 Mass. 254, 260–261. *Hurwitz* v. *Carpenzano*, 329 Mass.
702, 703. These instruments were the means adopted to
enable the dealer to obtain a loan of credit from the plain-
tiff so that the dealer might obtain articles for sale in its
store and at the same time to give the plaintiff a security
interest in the articles supplied for the advances which it
had made in purchasing the goods from the distributor until
it received payment from the dealer of the release price for
each article for which the dealer had secured a purchaser.

A jury could find that the plaintiff in accepting the dealer's
notes did not intend to waive its security interest, *Reed* v.
*Upton*, 10 Pick. 522, *Cotton* v. *Atlas National Bank*, 145
Mass. 43, 45, *Davidson* v. *Stewart*, 200 Mass. 393, *Rosenberg*
v. *Robbins*, 289 Mass. 402, 410; and there was nothing in
the trust receipts which deprived the plaintiff of its security

interest in the merchandise. *William W. Bierce, Ltd.* v. *Hutchins*, 205 U. S. 340. *Bailey* v. *Baker Ice Machine Co.* 239 U. S. 268. *Houck* v. *General Motors Acceptance Corp.* 44 Fed. (2d) 410, 412. *General Motors Acceptance Corp.* v. *Kline*, 78 Fed. (2d) 618. *Chichester* v. *Commercial Credit Co.* 37 Cal. App. (2d) 439.

The failure of Kelley to demand and repossess the plaintiff's goods on July 12, 1948, when he learned that the goods were being sold without making any payments to the plaintiff, does not in itself bar the maintenance of this action against the defendants. Neither was the plaintiff precluded from recovery merely because it was unable to distinguish the appliances sold prior to July 12, 1948, from those subsequently sold. The plaintiff is not suing to enforce any rights in the proceeds from those sales. See G. L. (Ter. Ed.) c. 255A, § 10. In so far as waiver is urged by the defendants, if it could be said to be of any materiality, it was at most a question of fact. In passing it may be noted that there was evidence of a voluntary surrender of the dealer's interest in the goods taken by Kelley. C. 255A, § 6, cl. 4. Whatever remedies an entruster may have against a trustee who has broken the terms of the contract in accordance with which goods had been delivered to him, we see nothing contained in G. L. (Ter. Ed.) c. 255A, inserted by St. 1936, c. 264, the uniform trust receipts act, which indicates any intent to prevent the entruster from maintaining an action in tort for conversion, in appropriate instances, like the present, where all the elements of such a cause of action exist.

The dealer in giving the trust receipts expressly acknowledged that the merchandise was held by it "for the purpose of storing said property," but the dealer also agreed "not to sell, loan, deliver, pledge, mortgage, or otherwise dispose of said appliances to any other person until after payment of amounts shown in Release Price column above." It is plain that both parties knew that the merchandise was furnished to the dealer for the purpose of display and sale in the dealer's store in accordance with a method well known

in the trade as "floor planning." *Associates Discount Corp.*
v. *Haynes Garage, Inc.* 304 Mass. 526, 527. The dealer had
the power of sale as to any of the articles in the trust re-
ceipts provided it first paid the plaintiff the release price
designated in the trust receipt.[1] This is not an instance
where the dealer having the right to sell deviates in some
detail in carrying out the sales, as by selling for a less price
than authorized by the owner, by selling on credit instead
of for cash, by taking inadequate security for the purchase
price, or in some other particular, *Dufresne* v. *Hutchinson,*
3 Taunt. 117, *Industrial & General Trust, Ltd.* v. *Tod,* 170
N. Y. 233, *Minneapolis Trust Co.* v. *Mather,* 181 N. Y. 205;
but it is rather an instance where as between the parties to
the transaction the payment of the release price was a con-
dition precedent to the right to sell an article covered by a
trust receipt. By the terms of the trust receipts, the time
for the payment of the release price to the plaintiff arrived
before the dealer sold the goods to its retail customer. The
dealer, however, never made any payments to the plaintiff
but continued disposing of the plaintiff's property in viola-
tion of the terms of the trust receipts. It was said in *United
Shoe Machinery Co.* v. *Holt,* 185 Mass. 97, 101, after pointing
out that actual possession or an immediate right to posses-
sion was necessary to maintain an action of trover, "but
where a bailee misuses the subject of the bailment, as he
does in case of an absolute sale transferring the whole prop-
erty, the bailment is ended and the general owner has an
immediate right of possession on which he can maintain
trover." *Carter* v. *Kingman,* 103 Mass. 517. *Greenall* v.
*Hersum,* 220 Mass. 278. *Lancaster* v. *Stanetsky,* 221 Mass.
312, 314. *Lawyers Mortgage Investment Corp. of Boston* v.
*Paramount Laundries Inc.* 287 Mass. 357, 360–361. *Geguzis*
v. *Brockton Standard Shoe Co.* 291 Mass. 368, 371. Restate-
ment: Torts, § 223 (e), comment f, § 232, comment b.

All these trust receipt goods which were sold by the dealer

---

[1] The dealer would have liberty of sale to a bona fide customer in the or-
dinary course of business without payment of the release price by virtue of
G. L. (Ter. Ed.) c. 255A, § 9, cl. 2 (c), if a controversy arose between the
plaintiff or the dealer and the customer.

were sold by the defendant Catino or under his immediate supervision. Catino was the president, a director, and the general manager of the dealer and acted knowingly in violation of the terms of the trust receipts. He presumably knew the contents of these receipts which he had duly executed in behalf of the dealer. It was agreed that the release price of none of the articles sold was ever transmitted to the plaintiff. It could be found that the disposal of the articles by Catino constituted a conversion of the plaintiff's property for which he could be held personally liable even though he was acting as the dealer's general manager and for its benefit. *Joyce* v. *Sage Bros. Co.* 206 Mass. 9. *Somerville National Bank* v. *Hornblower*, 293 Mass. 363, 368. *Syeds* v. *Hay*, 4 T. R. 260. *Laverty* v. *Snethen*, 68 N. Y. 522. *Comley* v. *Dazian*, 114 N. Y. 161. *General Motors Acceptance Corp.* v. *Thompson*, 70 N. D. 99. Mechem, Agency (2d ed.) §§ 1252–1256. Fletcher, Cyc. Corporations, § 1140. Restatement: Agency, § 349. Note, 152 A. L. R. 696. See *Kennedy* v. *Shain*, 288 Mass. 458.

The remaining question is the liability of the defendant Chase. All parties engaged in committing a conversion of the goods of another may be held jointly or severally for the wrong. *McAvoy* v. *Wright*, 137 Mass. 207. *Parker* v. *Taylor*, 180 Mass. 258. *Jacobs* v. *Anderson*, 244 Mass. 125. Chase was the treasurer and a director of the dealer. He also held a majority of its capital stock. He had invested approximately $4,000 in the dealer's business which was all the money that had been put into the corporation. An officer of a corporation does not incur personal liability for a tort committed by a corporation or by one of its officers merely by virtue of the office which he holds in the corporation. *Tibbetts* v. *Wentworth*, 248 Mass. 468. *Burnham* v. *Beverly Airways, Inc.* 311 Mass. 628. The duties of a treasurer toward the corporation in handling its funds have been frequently decided.[1] As to third persons a corporate officer

---

[1] *Fillebrown* v. *Hayward*, 190 Mass. 472, 480. *Hill* v. *Murphy*, 212 Mass. 1, 3. *Goodwin* v. *Simpson*, 292 Mass. 148, 154–155. *Lydia E. Pinkham Medicine Co.* v. *Gove*, 303 Mass. 1, 9.

including a treasurer cannot be held liable unless he commits a breach of a duty which he owes such person. *Lee* v. *Fisk*, 222 Mass. 418, 422–423. *Handy* v. *Miner*, 258 Mass. 53, 62. *Coe* v. *Ware*, 271 Mass. 570, 573.

The plaintiff, while disclaiming any liability upon the part of Chase for the conversion of the articles set forth in the declaration because of the mere receipt by Chase of the proceeds of the sales made by Catino,[1] contends that Chase knew that a part of the funds turned over to him by Catino came from the conversion by the latter of the plaintiff's property, and that Chase continued to receive these funds without objection, thus assenting to and acquiescing in the wrongdoing of Catino, and used them for the payment of the operating expenses of the dealer. The participation of Chase if shown in the wrongdoing of Catino would make him liable with Catino.[2] On the other hand, unless Chase had a part in the conversion of the goods he could not be held responsible for their loss.[3] The question is whether the evidence was sufficient to require submission of that issue to a jury.

There was evidence that Chase knew that some of the merchandise in the store was obtained by trust receipts issued to the plaintiff but that he did not know the particular articles covered by these receipts. There were articles in the store other than this trust receipt merchandise. Chase made no sales. He visited the store each week and

---

[1] See *Polley* v. *Lenox Iron Works*, 2 Allen, 182; *Varney* v. *Curtis*, 213 Mass. 309; *Marvell* v. *Disaster Loan Corp.* 134 Fed. (2d) 482; *Thomsen* v. *Culver City Motor Co. Inc.* 4 Cal. App. (2d) 639; *Lewiston Trust Co.* v. *Deveno*, 145 Maine, 224.

[2] *Lawrence Trust Co.* v. *Sun-American Publishing Co.* 245 Mass. 262, 266. *American Agricultural Chemical Co.* v. *Barnes Co. Inc.* 28 Fed. Sup. 73. *Vujacich* v. *Southern Commercial Co.* 21 Cal. App. 439. *McClory* v. *Dodge*, 117 Cal. App. 148. *Hirsch* v. *Phily*, 4 N. J. 408. *Passaic Falls Throwing Co.* v. *Villeneuve-Pohl Corp.* 169 App. Div. (N. Y.) 727. *Hinkle Iron Co.* v. *Kohn*, 229 N. Y. 179. *Cone* v. *United Fruit Growers' Association*, 171 N. C. 530. *Cohen* v. *Maus*, 297 Pa. 454. *Dollar* v. *Lockney Supply Co.* 164 S. W. 1076 (Tex. Civ. App.). *Parker* v. *Cone*, 105 Vt. 426.

[3] *Goodwin* v. *Simpson*, 292 Mass. 148, 154. *Browne* v. *Brockton National Bank*, 305 Mass. 521, 531. *Thomsen* v. *Culver City Motor Co. Inc.* 4 Cal. App. (2d) 639. *Barber* v. *Meyer*, 86 Colo. 175. *Darling & Co.* v. *Fry*, 24 S. W. (2d) 722 (Mo. App.). *Santa Barbara* v. *Pasquale Avallone & Stefano Miele, Inc.* 270 N. Y. 1. *Schroeder* v. *Sanford-Felt Investment Co.* 177 Okla. 54. *Cohen* v. *Maus*, 297 Pa. 454.

received from Catino a slip showing the business done during the previous week together with the money received by the dealer. He went over the books each month with an accountant. So far as appears none of these slips nor the books were put in evidence. Chase testified that there was nothing on the slips or in the books that indicated that any of the trust receipt goods were being sold. The receipts which he received each week from Catino were deposited in the dealer's account and paid out to its creditors. There was evidence that at a conference, held after remaining merchandise had been removed from the dealer's store, between Kelley, Catino, and Chase, Kelley requested payment for all the goods supplied by the plaintiff other than those repossessed by the plaintiff. Chase stated that the corporate dealer and not he had bought the goods, that he knew nothing about the merchandise being sold, that he saw no reason why he should pay, that he had not sold any of the merchandise, and that he did not know that it had been sold. Catino then stated that Chase knew about it as Catino had turned in the money and they had used it to pay other bills. Catino asked Chase how they could have obtained the money to pay these bills if it was not derived from selling this merchandise. Chase made no reply. The conference ended shortly thereafter when Kelley suggested that the defendants were not getting anywhere, arguing between themselves about the matter.

The plaintiff relies principally upon the failure of Chase to reply to Catino's statement, alleged to have been made at their conference with Kelley, to prove that Chase was cognizant of the fact that Catino was selling this trust receipt merchandise and continued to receive and apply the proceeds for the benefit of the dealer corporation. It is not every failure of a person to deny a statement made to him that can be regarded as an admission by him of the truth of the statement. Evidence of this nature is to be received with care and caution. We are not inclined to extend the scope of the doctrine of admission by silence, *Larry* v. *Sherburne*, 2 Allen, 34, *Commonwealth* v. *Boris*,

317 Mass. 309, *Trustees of the Church of the Disciples* v.
*Benevolent Fraternity of Unitarian Churches,* 319 Mass. 38,
*Mendelsohn* v. *Leather Manuf. Corp.* 326 Mass. 226, 238;
but where the circumstances are such that one is free to
deny a statement directed to him, the import of which he
understands and which relates to a matter within his knowl-
edge and is of such a nature that he would naturally be
expected to refute it if it were not true; his silence may be
considered as evidence that the statement is true. *Common-
wealth* v. *Kenney,* 12 Met. 235. *Proctor* v. *Old Colony Rail-
road,* 154 Mass. 251, 253. *Warner* v. *Fuller,* 245 Mass. 520,
528–529.

It is to be noticed that, just before these statements of
Catino, Chase had disclaimed liability and had stated and
repeated that he had no knowledge of the sales by Catino.
His position as to lack of knowledge was plainly and cate-
gorically set forth. These statements of Catino were based
upon a conclusion which did not logically follow from the
premises from which it was sought to be drawn. The state-
ments of Catino were hardly that Chase knew but were
rather the expression of an opinion that Chase possessed
such knowledge. Catino at no time stated that Chase knew
because he told him, or because he knew from the weekly
slips, the examination of the books, or in some other way.
What Catino said was an assumption predicated entirely
upon the ground that knowledge followed from the weekly
receipts turned over by Catino to Chase. In view of the
position taken by Chase at this conference we do not think
that he was required to repeat his denial of knowledge or to
enter into a debate with Catino in order to avoid an infer-
ence that Catino was telling the truth. Indeed, as far as
appears, there was nothing on the weekly receipt slips to
show that any part of these receipts came from this trust
receipt property. As already stated, the plaintiff conceded
that the mere receipt of these funds from Catino was not
sufficient to make out a case of conversion against Chase.
We do not think it could be properly found that the circum-
stances attending the making of these statements by Catino,

if they were made, were such that the natural and reasonable inference from Chase's silence was an admission by him as to the truth of what Catino had said. *Whitney* v. *Houghton*, 127 Mass. 527, 529–530. *Fitzgerald* v. *Williams*, 148 Mass. 462. *People* v. *DeBolt*, 269 Mich. 39. *People* v. *Countryman*, 201 App. Div. (N. Y.) 805. *Jasmin* v. *Parker*, 102 Vt. 405.

It follows that the judge was in error in directing a verdict for Catino and the plaintiff's exception thereto is sustained, but that the judge was right in directing a verdict for Chase and the exception thereto is overruled.

*So ordered.*