John F. **CULLEN,** Trustee–in–Bankruptcy, Plaintiff,

v.

Robert **DARVIN,** Martin Goodman and National Traders, Inc., Martin Goodman Associates (NTI–MGA), a Joint Venture, Defendants.

Civ. A. No. 91–10299–C.

United States District Court, D. Massachusetts.

Sept. 30, 1991.

John Francis Cullen, pro se.

Kenneth A. Sweder, Kaye, Fialkow, Richmond & Rothstein, Michael A. Collora, Dwyer & Collora, Boston, Mass., for defendants.

## MEMORANDUM

CAFFREY, Senior District Judge.

This matter is before the Court on two motions filed by Robert Darvin ("Darvin"), one of the defendants, a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and a motion for sanctions under Fed.R.Civ.P. 11. Darvin's motion to dismiss pertains to Counts I and II of the plaintiff's five-count amended complaint, while the motion for sanctions pertains to the plaintiff's initial complaint. For the reasons set forth below, Darvin's motion to dismiss is denied as to Count I and granted as to Count II. His motion for sanctions under Rule 11 is granted.

This case began as an adversary proceeding filed by John F. Cullen ("Cullen") in the bankruptcy court in connection with the bankruptcy case *In Re: Scandinavian Gallery, Inc.*, No. 88–12480–CJK. Cullen is the trustee-in-bankruptcy for Scandinavian Gallery, Inc. ("Scandinavian"), and Darvin was the president, chief executive officer, and shareholder of Scandinavian. This Court granted Darvin's motion that the court withdraw its reference of the case to the bankruptcy court, pursuant to 28 U.S.C. 157(d), and the case was removed to this Court.

Cullen, an attorney representing himself, filed an initial thirteen-count complaint, alleging, among other things, civil racketeering charges, fraudulent conveyances,

and breach of fiduciary duties. In response, the defendants filed a motion to dismiss and a motion for sanctions under Rule 11. Thereafter, Cullen, now represented by himself and other counsel, filed a five-count amended complaint, alleging similar violations, but excluding Darvin from civil racketeering charges. The Court will now address in turn Darvin's motions to dismiss Counts I and II of the amended complaint and his motion for sanctions.

## I.

■ Darvin has moved to dismiss Counts I and II of the amended complaint arguing that the two counts fail to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6). In deciding this motion, the Court must accept as true all the factual allegations set forth in the amended complaint and must draw all reasonable inferences in favor of the plaintiff. *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir.1990); *Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir.1989). Further, no count in the amended complaint should be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Dartmouth Review,* 889 F.2d at 16. In light of these standards, this Court shall first consider Count I and then Count II.

## A.

Count I of Cullen's amended complaint alleges that Scandinavian leased computer equipment from Fleet Credit Corporation ("Fleet"), and that Scandinavian sold the leased equipment without Fleet's consent. Cullen claims that, as a result, the estate of Scandinavian entered into a settlement agreement with Fleet in satisfaction of Fleet's claim for the equipment. Count I further alleges that Darvin caused Scandinavian to sell the equipment. Count I thus seeks indemnity or contribution from Darvin for having caused Scandinavian to convert the leased equipment tortiously.

■ As a preliminary matter, the Court must resolve whether it should take into consideration a copy of a document that the defendant appended to a supplemental memorandum submitted in support of his motion to dismiss. The defendant asserted that the appended document is central to a consideration of whether Count I states a claim upon which relief may be granted. In motions to dismiss, the introduction of materials outside the pleadings is permissible where the materials are central to the plaintiff's complaint. *Fudge v. Penthouse Int'l, Ltd.,* 840 F.2d 1012, 1015 (1st Cir.), *cert. denied,* 488 U.S. 821, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988). Courts have found supplemental material to be central where information in the material is the very subject matter of the complaint. *See Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 879 n. 3 (1st Cir.1991) (document alleged to be fraudulent in complaint held to be central); *Fudge,* 840 F.2d at 1015 (magazine article that was subject of libel suit found to be central).

The Court finds that the document submitted by the defendant is not central to the plaintiff's complaint. The appended document concerns the settlement agreement between the Scandinavian estate and Fleet. It does not go to the essence of the claim, that Darvin caused Scandinavian to convert the leased computer equipment. Therefore, for the purposes of reviewing this motion to dismiss, the Court ignores the document appended to Darvin's memorandum. The Court will now address the substance of Darvin's motion to dismiss Count I.

■ Under Massachusetts law, in order for one party to be entitled to contribution from another, the two parties must be jointly liable in tort to a third party. Mass. Gen.L. ch. 231B, § 1 (1990). The requirement that the parties be jointly liable is satisfied when the party from whom contribution is sought could have been held directly liable in tort to the original plaintiff. *Liberty Mutual Ins. Co. v. Westerlind,* 374 Mass. 524, 526, 373 N.E.2d 957, 959 (1978). If, however, the original plaintiff's claim sounds in a theory other than tort, there is

no right to contribution. *Dighton v. Federal Pacific Elec. Co.,* 399 Mass. 687, 691, 506 N.E.2d 509, 512 (1987). Therefore, in the instant case, Darvin would be liable for contribution only if he could have been held directly liable in tort to Fleet, the original plaintiff.[1]

Thus, if Count I of the amended complaint alleges facts that would be sufficient to maintain a cause of action against Darvin for tortious conversion of equipment owned by Fleet, the Court would have to deny Darvin's motion to dismiss Count I. Darvin, however, argues that because Fleet's claim sounds in contract, not tort, he would not be liable for contribution. The issue that the Court must resolve, thus, is whether Fleet's claim is one based in tort or contract.

■ Under Massachusetts statutory law, the failure of a lessee of personal property to return the leased property can give rise to a presumption that the lessee converted the property to the lessee's own use. Mass.Gen.L. ch. 231, § 85H (1990); *see also* 8 C.J.S. *Bailment* § 36 (1988) ("In the absence of a statute or an agreement giving him such power, a bailee cannot sell, pledge, or otherwise transfer the property so as to give title, and his attempt to do so may be treated as a conversion of the property."). Therefore, accepting Cullen's factual averments as true, and drawing all reasonable inferences therefrom in Cullen's favor, Count I states a claim for conversion upon which relief could be granted. Cullen's claim, then, can be characterized as one sounding in tort, and Darvin thus could be liable for contribution.

Because Count I states a claim for contribution upon which relief may be granted, Darvin's motion to dismiss is denied as to Count I. At this stage, however, the Court declines to engage in the further inquiry of whether Count I states a claim for indemnity.

**B.**

Count II alleges that, in 1976, Darvin formed a business called American Resources Center ("American"), which operated until, at least, 1987. Cullen claims that, throughout its existence, American operated out of the same offices as Scandinavian, alleging that American shared with Scandinavian such facilities as supplies and telephones, and that the two entities shared office staff, including secretaries and accountants. Count II further alleges that American paid nothing to Scandinavian for the use of its facilities.

Cullen claims that American's only function was to consult with European furniture suppliers so that they would design furniture that they later would sell to Scandinavian. American allegedly received commissions and royalties based on the sales made to Scandinavian by these suppliers. According to Count II, American dealt exclusively with sales made to Scandinavian.

The thrust of Count II is that Darvin, doing business as American, was an alter ego of Scandinavian, and that he therefore should be liable for Scandinavian's debt in an amount commensurate with the commission and royalty revenue attributed to American. Thus, Cullen seeks to disregard Scandinavian's corporate entity and hold its shareholder, Darvin, responsible for a portion of its debt.

The standard under Massachusetts law for determining whether a plaintiff may "pierce the corporate veil" is as follows:

[Disregarding the corporate entity may be justified when] (a) ... there is active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control, in the activities of another and there is some fraudulent or injurious consequence of the intercorporate relationship, or (b) when there is a confused intermingling of activity of two or more corpora-

---

1. A corporate officer may be held personally and directly liable for torts which he commits even though the officer may have been acting on behalf of the corporation. *Refrigeration Discount Corp. v. Catino,* 330 Mass. 230, 235, 112

N.E.2d 790, 794 (1953); *see also Bond Leather Co. v. Q.T. Shoe Mfg. Co.,* 764 F.2d 928, 938 (1st Cir.1985); 3A Fletcher, Cyclopedia of the Law of Private Corporations §§ 1135–40 (1986).

tions engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting.... Where there is common control of a group of separate corporations engaged in a single enterprise, failure (a) to make clear which corporation is taking action in a particular situation and the nature and extent of that action, or (b) to observe with care the formal barriers between the corporations with a proper segregation of their separate businesses, records, and finances, may warrant some disregard of the separate entities in rare particular situations in order to prevent gross inequity.

*My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 619–20, 233 N.E.2d 748, 752 (1968). Courts in this district have interpreted this standard to require a showing "that piercing the corporate veil is necessary to defeat fraud or wrong or gross inequity." *Hoffman v. Optima Systems, Inc.*, 683 F.Supp. 865, 871 (D.Mass.1988); *NCR Credit Corp. v. Underground Camera, Inc.*, 581 F.Supp. 609, 612 (D.Mass.1984).

■ Cullen relies in part on the allegation that Scandinavian shared some of its facilities and personnel with American, without requiring American to pay for them. Cullen also relies on the allegation that, by receiving commissions and royalties for furniture purchased by Scandinavian, American siphoned money away from Scandinavian. While these allegations might tend to show that there was a measure of intermingling between the two entities, the complaint fails to allege facts from which an inference of gross inequity could be drawn. Therefore, Darvin's motion to dismiss is granted as to Count II.

## II.

In addition to the motions to dismiss Counts I and II of the amended complaint, defendant Darvin seeks sanctions against plaintiff-attorney Cullen, pursuant to Rule 11 of the Federal Rules of Civil Procedure, for allegations expressed in the original complaint.

■ Rule 11 attempts to deter dilatory and abusive tactics in pleading and motion practice and to streamline the litigation process by lessening frivolous claims. Fed. R.Civ.P. 11, 1983 amendment advisory notes. To further these goals, Rule 11 mandates that the signer of a pleading take responsibility for the claims alleged by making a reasonable inquiry that they are well grounded in fact and existing law. Fed.R.Civ.P. 11; *see Lancellotti v. Fay*, 909 F.2d 15 (1st Cir.1990). Attorneys are also subject to a continuing obligation to investigate their clients' claims throughout the proceeding, ensuring that any subsequent filings also meet the Rule 11 standard in light of the reasonable inquiry and improper purpose grounds for sanctions. *Kale v. Combined Ins. Co. of America*, 861 F.2d 746, 758 (1st Cir.1988).

The standard for determining compliance with Rule 11 is an objective test of reasonableness under the circumstances. *Cruz v. Savage*, 896 F.2d 626, 631 (1st Cir.1990); *Muthig v. Brant Point Nantucket, Inc.*, 838 F.2d 600, 604–05 (1st Cir.1988); Fed. R.Civ.P. 11, 1983 amendment advisory committee notes. Under this standard, the Rule does not allow subjective, good faith pleading as to what the attorney may have believed, but "explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir.1985); *see Cruz*, 896 F.2d at 631; *Muthig*, 838 F.2d at 604–05. Courts, therefore, must inquire as to whether "a reasonable attorney in like circumstances could believe his actions to be factually and legally justified." *Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir.1987). The notes of the advisory committee caution, however, that courts should "avoid using the wisdom of hindsight" and instead focus their inquiry on what was reasonable at the time the attorney acted when signing the document in question. Fed.R.Civ.P. 11, 1983 amendment advisory committee notes.

If an attorney violates this standard, Rule 11 requires that courts impose appropriate sanctions. Fed.R.Civ.P. 11, 1983 amendment advisory committee notes; *Cooter & Gell v. Hartmarx Corp.,* —— U.S. ——, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990). Despite its mandate to impose sanctions, Rule 11 does not give further guidance as to the particular appropriate sanctions. That particular sanction is fashioned by the trial judge, who is "best positioned to decide what sanction best fits a particular case." *Anderson v. Beatrice Foods Co.,* 900 F.2d 388, 394 (1st Cir.1990). Trial courts, therefore, have broad discretion to determine an appropriate penalty, keeping in mind that the sanctions serve a dual purpose of deterrence and compensation. *Id.* at 395. For example, district courts have penalized parties by imposing monetary sanctions, such as payment of the opposing party's legal expenses, or, where appropriate, admonishment or reprimand. *Figueroa–Ruiz v. Alegria,* 905 F.2d 545, 549 (1st Cir.1990); *Unanue–Casal v. Unanue–Casal,* 898 F.2d 839, 842 (1st Cir.1990); *Thomas v. Capital Sec. Servs., Inc.,* 836 F.2d 866, 877–78 (5th Cir. 1988).

■ In summary, as stated in *Cooter & Gell,* this Court must consider three issues in determining whether Rule 11 has been violated. 110 S.Ct. at 2457. First, this Court must review the "nature of the attorney's prefiling inquiry and the factual basis of the pleading." *Id.* This Court must also analyze the legal issues in the pleading to determine if it is "warranted by existing law" and "whether the attorney's conduct violated Rule 11." *Id.* Finally, if mandated by the above analysis, this Court must determine an appropriate sanction.

Turning to the facts of the instant case, defendant Darvin alleges that plaintiff failed to make a reasonable inquiry into factual and legal allegations in the initial complaint. Specifically, defendant asks for our review of the adequacy of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), count against him with respect to its al-

leged failure to plead with particularity and its failure to allege proper legal elements.

■ First, the initial complaint in question must satisfy the particularity requirements of Rule 9(b). *Curtis v. Duffy,* 742 F.Supp. 34 (D.Mass.1990). In order to plead with particularity in a general fraud case, the complaint must specify the "time, place, and content of an alleged false representation." *New England Data Servs., Inc. v. Becher,* 829 F.2d 286, 288 (1st Cir. 1987) (citing *McGinty v. Beranger Volkswagen, Inc.,* 633 F.2d 226, 228 (1st Cir. 1980)). In this circuit, this particularity requirement is construed strictly, requiring that "supporting facts on which the belief is founded must be set forth in the complaint." *Hayduk v. Lanna,* 775 F.2d 441, 443–44 (1st Cir.1985). In the instant case, the initial complaint consisted of vague, general assertions as to the fraudulent conduct of defendant Darvin. Plaintiff alleged no time, location, content, or basis for any of the alleged representations that he plead. In contrast, plaintiff's amended complaint, which was filed by present counsel two months later and excluded all RICO charges against Darvin, specifies dates, specific allegations, and facts to support his beliefs. Thus, plaintiff's factual allegations in the initial complaint, gleaned from a seemingly cursory prefiling inquiry, were inadequate.

Second, the complaint must be warranted by existing law. In this matter, this Court's analysis will focus on alleging a pattern of racketeering activity. In order to prove a pattern of racketeering activity, the plaintiff must prove the relatedness and continuity of the racketeering activities. *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989). With regard to the relatedness element, the plaintiff must show that the predicate acts have the same "purposes, results, participants, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240, 109 S.Ct. at 2901. In the complaint at issue, plaintiff failed to allege enough facts to indicate that these

six predicate acts—mail fraud, wire fraud, transportation of stolen property in interstate commerce, receipt of stolen property in interstate commerce, bankruptcy fraud, and perjury—are interrelated, merely stating that the predicate acts happened "continuously and systematically, over a substantial period of time." Plaintiff's Initial Complaint at 7. Even if plaintiff argues that he made out a colorable claim for a "pattern" of racketeering based on the pleading of six different predicate acts, this reasoning is inaccurate. As the Court in *H.J. Inc.* stated, "it is not the number of predicates but the relationship that they bear to each other" which proves a pattern of racketeering activity under RICO. 492 U.S. at 238, 109 S.Ct. at 2900.

As for the second element, continuity, plaintiffs must show "either a closed period of repeated conduct, or … past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241, 109 S.Ct. at 2901. Although the complaint alleges the starting date of the proposed racketeering violations, January 1, 1986, and an end date, the complaint's filing date, it failed to include any more temporal support for when these violations occurred. The complaint did not specify any other dates of alleged violations, permitting no inference of the continuity of the racketeering activities.

Based on the foregoing reasons, this Court holds that plaintiff-attorney Cullen did not conduct reasonable prefiling inquiries into the factual or legal viability of his initial RICO claim against defendant Darvin. The fact that he later amended his complaint does not expunge his prior transgression. Because Rule 11 sanctions attorneys for abuse of judicial process, a court must focus on the errant pleading itself, at the time it was filed. *See Cooter & Gell*, 110 S.Ct. at 2457 (quoting *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1077 (7th Cir.1987). Thus, by failing to act as a reasonable attorney would have done in similar circumstances, Attorney Cullen violated Rule 11.

By finding this violation, this Court is required to sanction Cullen, but the Court has broad discretion in meting out appropriate sanctions. This Court holds that plaintiff-attorney Cullen must reimburse defendant Darvin for all costs associated with litigating the motions made in response to the initial complaint, including the motion to dismiss and the motion for Rule 11 sanctions. Darvin shall file with this Court an affidavit substantiating any costs, including reasonable attorney's fees, by October 21, 1991. Cullen may respond to this affidavit by November 11, 1991.

Accordingly, this Court denies defendant's motion for dismissal of Count I of the amended complaint; grants defendant's motion for dismissal of Count II of the amended complaint; and grants defendant Darvin's motion for Rule 11 sanctions against attorney-trustee Cullen.